UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MICHAEL PIERCE and PATRICK GOULD, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ROSETTA STONE, LTD., and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No: C 11-01283 SBA<br><br>**ORDER GRANTING SECOND AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Docket 31 |

The parties are presently before the Court on Plaintiffs Michael Pierce and Patrick Gould's (collectively, "Plaintiffs") second amended motion for preliminary approval of class action settlement, which seeks, *inter alia*, preliminary approval of the Second Amended Settlement Agreement, conditional certification of two settlement classes, and approval of two notice and two claim forms. Dkt. 31. Defendant does not oppose the motion. Dkt. 32. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS Plaintiffs' motion, for the reasons stated below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I.  **BACKGROUND**

This is a wage and hour hybrid state law class action under Rule 23 of the Federal Rules of Civil Procedure and federal law collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, brought on behalf of individuals who were employed as salaried managers by Defendant Rosetta Stone, Ltd. ("Defendant"). Second Amended Complaint ("SAC") ¶ 1, Dkt. 1, Exh. R.

On April 27, 2010, Plaintiffs filed the instant action in the Superior Court of California, County of Alameda, against Defendant alleging violations of various provisions of California's Labor Code and a violation of California's Unfair Competition Law ("UCL").  Compl., Dkt. 1, Exh. A.  On May 25, 2010, a first amended complaint ("FAC") was filed.  FAC, Dkt. 1, Exh. E.   Plaintiffs filed a SAC on February 18, 2011, which added a federal claim for unlawful failure to pay wages in violation of the FLSA.  See SAC.  On March 16, 2011, the action was removed to this Court on the basis of federal question jurisdiction.  Notice of Removal, Dkt. 1.

The SAC alleges six claims for relief: (1) unlawful failure to pay overtime wages in violation of IWC Wage Order 7 and California Labor Code §§ 510, 1194, and 1198; (2) failure to provide meal and rest periods in violation of California Labor Code §§ 226.6, 512; (3) failure to provide accurate itemized wage statements in violation of California Labor Code §§ 226, 1174; (4) failure to pay wages on termination in violation of California Labor Code § 203; (5) unfair business practices in violation of the UCL; and (6) unlawful failure to pay wages in violation of the FLSA.  See SAC.

The SAC alleges that Defendant has had a consistent policy of: (1) permitting, encouraging and/or requiring its overtime-exempt salaried managers to work in excess of 8 hours per day and in excess of 40 hours per week without paying them overtime compensation in violation of the FLSA and California's wage and hour laws; (2) unlawfully failing to provide Plaintiffs and the "California Class" members statutorily-mandated meal and rest periods; (3) willfully failing to provide Plaintiffs and the "California Class" members with accurate semi-monthly itemized wage statements reflecting the total number of hours worked, the applicable deductions, and the applicable hourly rates in effect during any pay period; and (4) willfully failing to pay compensation (including unpaid overtime) in a prompt and timely manner to certain "California Class" members whose employment with Defendant was terminated.  SAC ¶¶ 4-5.

On December 27, 2011, the parties agreed to settle this matter following two private mediation sessions.  See Pls.' Mtn. at 2; Salassi Decl. ¶¶ 14-15, Dkt. 31-1.  On that same

day, Plaintiffs filed a motion for preliminary approval of class action settlement.  Dkt. 23.  On January 31, 2012, a hearing was held on Plaintiffs' motion.  Dkt. 25.  At the hearing, the Court indicated that it would not grant Plaintiffs' motion based on numerous deficiencies contained in the briefing.  On February 21, 2012, Plaintiffs filed an amended motion for preliminary approval of class action settlement.  Dkt. 27.  On September 28, 2012, the Court issued an Order denying Plaintiffs' amended motion due to deficiencies with respect to the proposed California Class Notice Form and California Class Claim Form submitted by Plaintiffs.  Dkt. 30.  Plaintiffs subsequently filed a second amended motion for preliminary approval of class action settlement, which, *inter alia*, seeks preliminary approval of the Second Amended Settlement Agreement, conditional certification of two settlement classes, and approval of two notice and two claim forms.  Pls.' Mtn. at 2.

The settlement encompasses all claims asserted by the Plaintiffs on behalf of both the "California Class" and the "FLSA Class."  Second Am. Settlement Agreement ¶ 43, Dkt. 31-1, Exh. A.  The proposed settlement classes are defined as follows:

> The California Class shall consist of all persons employed as exempt Store Managers by Defendant, in one or more of Rosetta Stone's California retail stores during any portion of the period from April 27, 2006 through the date which the Court grants final approval of the Settlement (i.e., the 'Settlement Period').  Except for periods that such persons held the designated positions, the California Class shall not include any person holding any other position not expressly included in the definition of the California Class in this Agreement.
>
> The FLSA Class shall consist of all persons employed as exempt Store Managers by Defendant, in one or more of Rosetta Stone's retail stores located in any portion of the United States during any portion of the period from February 18, 2008 through the date which the Court grants final approval of the Settlement (i.e., the 'Settlement Period').  Except for periods that such persons held the designated positions, the FLSA Class shall not include any person holding any other position not expressly included in the definition of the FLSA Class in this Agreement.

Id. ¶¶ 44-45.

The salient terms of the settlement call for: (1) payment of a non-reversionary settlement amount of $600,000 into a gross settlement fund for the classes; (2) payment of attorneys' fees in the amount of $200,000, which represents one-third of the gross settlement fund, plus costs; and (3) an incentive award in the amount of $5,000 to each

class representative. Second Am. Settlement Agreement ¶ 43. Defendant has agreed to pay the settlement amount in exchange for the settlement class members releasing Defendant from liability for all claims related to their classification as exempt store managers during the relevant class periods, which includes, but is not limited to, any claims that were or could have been asserted. See id. ¶¶ 69-70.

Under the terms of the settlement, two-thirds of the Net Settlement Fund[1] will be distributed to California Class members for settlement of claims alleged under both California and federal law. Second Am. Settlement Agreement ¶ 43. The remaining one-third of the Net Settlement Fund will be distributed to the FLSA Class members for settlement of the FLSA claim. Id.

Settlement shares for California Class members will be distributed as follows: seventy-five percent (75%) of the total payment allocated to California Class members will be disbursed on a pro rata basis to members for settlement of the state law claims based on the number of workweeks a member was employed as a salaried manager with Defendant during the settlement period. Second Am. Settlement Agreement ¶ 43. The remaining twenty-five percent (25%) of the payment allocated to California Class members will be disbursed to members who consent to join the FLSA aspect of the settlement on a pro rata basis for settlement of the FLSA claim based on the number of workweeks the member was employed as a salaried manager with Defendant during the settlement period. Id. Settlement shares for FLSA Class members will be disbursed on a pro rata basis to FLSA Class members for settlement of their FLSA claim based on the number of workweeks the member was employed as a salaried manager with Defendant during the settlement period. Id. Because all of the California Class members are also potentially members of the FLSA Class, California Class members that opt-in to the FLSA aspect of the settlement will only

---

[1] The Net Settlement Fund is defined as "the Gross Fund Value after deduction of Plaintiffs' Attorneys' Fees and Costs, the amount of the Settlement Administration Expenses, and the amount of the Class Representative Service Awards, and is the amount that will be apportioned to Settlement Class Members for Settlement Payments. . . ." Second Am. Settlement Agreement ¶ 23.

be compensated from the two-thirds share of the Net Settlement Fund allocated to California Class members to avoid double recovery. See id.

## II. DISCUSSION

### A. Conditional Certification of Settlement Classes

Plaintiffs seek conditional certification of both a Rule 23 class action and a FLSA collective action. In the instant motion, Plaintiffs attempt to correct the deficiencies identified by the Court in its prior Order denying Plaintiffs' amended motion for preliminary approval of class action settlement. In that Order, the Court found that conditional certification of a collective action under the FLSA is appropriate, and that Plaintiffs' proposed plan to distribute the FLSA Class Notice Form and FLSA Claim Form by mail to the last known addresses of potential collective action members is a reasonable method calculated to reach FLSA Class members. The Court also approved the content of the proposed FLSA Class Notice Form and proposed FLSA Claim Form (i.e., consent to join form) submitted by Plaintiffs.[2]

Additionally, the Court found that Plaintiffs satisfied the four prerequisites identified in Rule 23(a) for conditional class action certification, i.e., numerosity, commonality, typicality, and adequate representation. The Court also found that Plaintiffs satisfied the "predominance" and "superiority" requirements of Rule 23(b)(3). However, the Court determined that Plaintiffs failed to satisfy the class notice requirements under Rule 23. While the Court found that the Plaintiffs' proposal to mail the California Class Notice Form to class members by first class mail satisfies the requirements of Rule 23, the Court found that the content of the proposed California Class Notice Form did not provide the best practicable notice under the circumstances.

As explained more fully in the Court's prior Order, the Court found that the proposed California Class Notice Form failed to fairly, accurately and reasonably inform class

---

[2] The Court, however, did not approve the thirty-day opt-in period. Citing Sanchez v. Sephora USA, Inc., 2012 WL 2945753, at *6 (N.D. Cal. 2012) (Armstrong, J.), the Court found that a notice period of sixty days is appropriate.

members of: (1) the hybrid nature of this action; (2) the claims involved in this action; (3) the options that are available to California Class members in connection with the settlement, including how to participate or not participate in the Rule 23 class action and the FLSA collective action aspects of the settlement; and (4) the consequences of opting-in to the FLSA collective action, opting-out of the Rule 23 class action, or doing nothing.[3] See Dkt. 30. The Court also identified specific deficiencies with respect to the California Class Claim Form. Id. In light of these deficiencies, the Court declined to conditionally certify a Rule 23 class. Id. As a consequence, the Court denied Plaintiffs' amended motion for preliminarily approval of class action settlement without prejudice to the refiling of a motion that corrects the deficiencies. Id.

In the instant motion, Plaintiffs contend that they have addressed the Court's concerns. The Court agrees. Having reviewed the amended proposed California Class Notice Form, the Court finds that the form is sufficient to meet the requirements of Rule 23(c)(2)(B) so long as Plaintiffs modify the "DO NOTHING" section of the form to indicate that California Class members who do nothing in response to the Class Notice will not receive a settlement payment for the FLSA aspect of the settlement and will retain whatever rights he/she has against Defendant under the FLSA. The Court also finds that the amended proposed California Class Claim Form corrects the deficiencies previously identified by the Court. Accordingly, for the reasons stated above and in the Court's prior Order denying Plaintiffs' amended motion for preliminary approval of class action settlement, the Court concludes that Plaintiffs have carried their burden of demonstrating that conditional certification of a FLSA collective action and a Rule 23 class action is warranted.

///

///

---

[3] The Court also identified several deficiencies with respect to the procedure for objecting to the settlement set forth in the proposed California Class Notice Form. A review of the amended proposed notice form reveals that Plaintiffs have corrected those deficiencies.

### B. Preliminary Approval of Settlement

Rule 23(e) requires the court to determine whether a proposed settlement is "'fundamentally fair, adequate, and reasonable.'" Staton v. Boeing Co., 327 F.3d 928, 952 (9th Cir. 2003). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." In re Syncor ERISA Litig., 516 F.3d 1095, 1100 (9th Cir. 2008) (citation omitted). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982).

To make a fairness determination, the district court must balance a number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. See Molski v. Gleich, 318 F.3d 937, 953 (9th Cir. 2003). In conducting this evaluation, it is neither for the court to reach any ultimate conclusions regarding the merits of the dispute, nor to second guess the settlement terms. See Officers for Justice, 688 F.2d at 625. Given that some of the aforementioned "fairness" factors cannot be fully assessed until the Court conducts the final approval hearing, "a full fairness analysis is unnecessary at this stage." Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotations and citation omitted). Rather, preliminary approval of a settlement and notice to the proposed class is appropriate if: "[1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." In re Tableware Antitrust Litigation, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007).

///

### 1. The Settlement Process

The first factor addresses the means by which the parties reached the proposed settlement. Here, the settlement resulted from non-collusive negotiations, i.e., two private mediation sessions with a mediator experienced in wage and hour class actions, Salassi Decl. ¶¶ 10, 14-15, which "tends to support the conclusion that the settlement process was not collusive." See Villegas v. J.P. Morgan Chase & Co., 2012 WL 5878390, at *6 (N.D. Cal. 2012) (Armstrong, J.); Satchell v. Fed. Exp. Corp., 2007 WL 1114010, at *4 (N.D. Cal. 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). In addition, Plaintiffs' counsel claims to have reviewed more than 1,000 pages of documents produced by Defendant, interviewed more than fifteen class members, and obtained informal discovery prior to participating in the mediation sessions. Salassi Decl. ¶¶ 8-12. These facts further support the conclusion that Plaintiffs were appropriately informed in negotiating a settlement and that the settlement was not the result of collusion or bad faith by the parties or counsel.

### 2. Obvious Deficiencies

The second factor considers whether there are any obvious deficiencies with the proposed settlement. "To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." In re Tableware Antitrust Litig., 484 F.Supp.2d at 1080. However, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." In re Mego Fin. Corp. Secs. Litig., 213 F.3d 454, 459 (9th Cir. 2000). Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment. Id. (noting that whether the settlement is fair and adequate depends on the "the difficulties in proving the case[.]"); accord Villegas, 2012 WL 5878390, at *6.

Here, the gross settlement ($600,000) is approximately 58% of the "maximum damage exposure" calculated by Plaintiffs ($1,030,001.55) based on the data provided by Defendant. See Salassi Decl. ¶¶ 5, 20. According to Plaintiffs' counsel, the settlement is

- 8 -

"well within the range of reasonableness and is in the best interest of the Class Members in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Defendant, and potential appellate issues." Id. ¶ 16. In reaching this conclusion, Plaintiffs' counsel "evaluated the Settlement by weighing the maximum damages available to the Class Members for their statutory claims against the relevant risk factors," which include, among other things, the possibility that class certification of the settlement classes would be denied, the possibility that Defendant could have prevailed on the merits by establishing that the settlement class members were properly classified as exempt employees, and the possibility that Defendant could have established that Plaintiffs' damages estimate of maximum damages per class member is "vastly overstated and does not comport with the actual damages suffered by Class Members." Id. ¶ 18. Further, Plaintiffs' counsel considered the arguable presence of various penalties and punitive recoveries . . . and weighed those potential recoveries against the probable defenses thereto and likelihood of success." Id. ¶ 19. Plaintiffs' counsel also considered the potential defenses to the claims alleged in the operative complaint, including: "Defendant's likely argument that Plaintiffs could not show its actions to be 'willful' entitling the class to a recovery under [Labor Code § 203]"; and "Defendant's likely argument that Plaintiffs could not show that there was an 'injury' entitling the class to a recovery under [Labor Code § 226]." Id.

According to Plaintiffs, the settlement amount of $600,000 "represents a substantial portion of Defendant's maximum exposure, discounted by the risk and expense of further litigation and the interest of providing Class Members with a guaranteed recovery, quickly." Pls.' Mtn. at 12. After deducting the costs of administration, attorneys' fees, costs, and the incentive awards, Plaintiffs assert that "the Settlement provides for the equivalent of approximately $181.39 (equivalent to 3.5 hours of overtime, 5 missed meal and/or rest periods, and California-specific penalties) for each of the approximately 1,358 weeks worked by California Class Members during the class period; and $25.69 (approximately 3.5 hours of overtime) for each of the approximately 4,794 weeks worked

by FLSA Class Members outside of the State of California during the class period." Id. at 12-13.

The Court finds that the settlement amount, at least preliminarily, appears to be fair, reasonable and adequate given the risks of pursuing the litigation to judgment. Even if Plaintiffs were to prevail at trial, they would be required to expend considerable additional time and resources potentially outweighing any additional recovery obtained through successful litigation. While the Court has some concern regarding the fact that Plaintiffs have failed to provide a detailed analysis of how they arrived at the settlement figure, issues concerning the amount of the settlement are better resolved at the final approval hearing. See Harris v. Vector Marketing Corp., 2011 WL 1627973, at *14 (N.D. Cal. 2011) (noting that after the claims process is completed, "the parties and the Court will be in a position to accurately calculate the value of the settlement and compare it to the maximum damages recoverable were the Plaintiff class to succeed at trial"). In their motion for final approval, Plaintiffs should provide information that allows the Court to compare the value of the settlement with the maximum damages recoverable if the settlement classes were to prevail at trial.

### 3. Preferential Treatment

Under the third factor, the Court examines whether the settlement agreement provides preferential treatment to any class member. The fairness inquiry "focuses primarily upon particular aspects of the decree that directly lend themselves to pursuit of self-interest . . . namely attorneys' fees and the distribution of relief . . . among class members." Staton, 327 F.3d at 960. "Approval of a plan for the allocation of a class settlement fund is governed by the same legal standards that are applicable to approval of the settlement: the distribution plan must be 'fair, reasonable and adequate.' " In re Citric Acid Antitrust Litig., 145 F.Supp.2d 1152, 1154 (N.D. Cal. 2001).

Under the terms of the Second Amended Settlement Agreement, the parties have agreed to settle the six claims for relief alleged by California Class members and the one claim for relief alleged by the FLSA Class members. Second Am. Settlement Agreement ¶

43. The parties propose allocating two-thirds of the Net Settlement Fund to the 48 potential members of the California Class and the remaining one-third of the fund to the 178 potential members of the FLSA Class on a pro rata basis based on the number of workweeks that a class member was employed by Defendant during the respective class periods.[4]  Id.  The agreement further provides that seventy-five percent of the payment amount allocated to California Class members will be disbursed on a pro rata basis to California Class members for settlement of five state law claims, while the remaining twenty-five percent will be disbursed to California Class members who consent to join the FLSA aspect of the settlement for settlement of the FLSA claim.  Id.

According to Plaintiffs, the "Settlement Fund is allocated to provide greater compensation to the California Class to account for the fact that they are provided with greater remedies under California law, including, *inter alia*, a longer statutory period, compensation at 1 ½ times their regular rate of pay for overtime hours worked (as opposed to compensation at ½ times their regular rate of pay under the FLSA), compensation for missed meal and rest breaks, and they were generally classified as exempt employees for a longer period of time."  See Dkt. 27.  At this juncture, the Court is satisfied that the allocation of the Net Settlement Fund does not unfairly benefit certain class members. Thus, for purposes of preliminary approval, the Court finds that the distribution of relief among class members appears to be fair, reasonable and adequate.

Finally, the Court notes that it has some concern regarding Plaintiffs' anticipated request for attorneys' fees based on one-third of the net settlement fund in light of the fact that the benchmark for such an award is twenty-five percent.  See In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 942 (9th Cir. 2011).  Despite this concern, the Court need not resolve this matter at the preliminary approval stage, since the propriety of the fee

---

[4] Defendant's "HR BUSINESS PARTNER" avers that there are a total of 226 current and former employees of Defendant that were classified as salaried exempt store managers during the "time periods identified in the Second Amended Complaint and revised Settlement Agreement."  Aivano Decl. ¶ 2, Dkt. 27-4.  Of these 226 store managers, 48 were employed in the state of California and 178 were employed outside of California.  Id.

request is an issue that can be determined at the Final Fairness Hearing. However, Plaintiffs' counsel should be mindful of this issue in connection with their motion for attorneys' fees and for final approval.[5]

### 4. Range of Possible Approval

Lastly, the Court must consider whether the settlement falls within the range of possible approval. To determine whether a settlement "falls within the range of possible approval," a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." In re Tableware Antitrust Litig., 484 F.Supp.2d at 1080. As discussed above, the settlement amount of $600,000 preliminarily appears to be fair, reasonable and adequate in light of the "maximum damage exposure" calculated by Plaintiffs and the risks attendant with further litigation. Thus, for purposes of preliminary approval, the Court is satisfied that the settlement amount is within the range of possible approval.

### C. Appointment of Class Representatives and Class Counsel

Plaintiffs seek appointment as Class Representatives for the settlement classes. Plaintiff Michael Pierce has prosecuted this action since its inception and Plaintiff Patrick Gould has prosecuted this action since the filing of the first amended complaint on May 25, 2010. See Pierce Decl., Dkt. 27-2; Gould Decl., Dkt. 27-3. The Court finds that Plaintiffs have claims typical of absent class members belonging to the settlement classes, and by all accounts, appear to be adequate representatives of those class members. Accordingly, Plaintiffs are appointed to serve as Class Representatives.

In addition, Plaintiffs seek the appointment of their current counsel, Scott Cole & Associates, APC, and the Law Offices of Timothy P. Rumberger, as Class Counsel. These

---

[5] The proposed Second Amended Settlement Agreement provides that the named Plaintiffs shall each receive an incentive award of $5,000 for their role as a class representative. Salassi Decl., Exh. A ¶ 43. In this District, a $5,000 incentive award is presumptively reasonable. In re WalMart Stores, Inc. Wage and Hour Litig., 2011 WL 31266, at *4 (N.D. Cal. 2011) (Armstrong, J.) (noting that a $5,000 incentive award is presumptively reasonable in this District). The appropriate amount of the incentive awards will be resolved in connection with the Final Fairness Hearing.

law firms have represented Plaintiffs since the inception of the case and have submitted documentation regarding their prior experience and qualifications. See Salassi Decl., Exhs. B, C, Dkt. 27-1. The Court finds that these law firms have sufficient experience that it is appropriate for them to serve as Class Counsel for the settlement classes.

## III. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Plaintiffs' second amended motion for preliminary approval of class action settlement is GRANTED.

2. All defined terms in this Order shall have the same meaning as set forth in the Second Amended Settlement Agreement.

3. For settlement purposes only, pursuant to Rule 23(a) and 23(b)(3), the Court conditionally certifies the following settlement classes as follows:

> The California Class shall consist of all persons employed as exempt Store Managers by Defendant, in one or more of Rosetta Stone's California retail stores during any portion of the period from April 27, 2006 through the date which the Court grants final approval of the Settlement (i.e., the 'Settlement Period'). Except for periods that such persons held the designated positions, the California Class shall not include any person holding any other position not expressly included in the definition of the California Class in this Agreement.

> The FLSA Class shall consist of all persons employed as exempt Store Managers by Defendant, in one or more of Rosetta Stone's retail stores located in any portion of the United States during any portion of the period from February 18, 2008 through the date which the Court grants final approval of the Settlement (i.e., the 'Settlement Period'). Except for periods that such persons held the designated positions, the FLSA Class shall not include any person holding any other position not expressly included in the definition of the FLSA Class in this Agreement.

4. The Court APPOINTS Scott Cole & Associates, APC, and the Law Offices of Timothy P. Rumberger as Class Counsel for settlement purposes only.

5. The Court APPOINTS Plaintiffs as Class Representatives.

6. The Court APPOINTS CPT Group, Inc. as the Claims Administrator.

7. A Final Approval and Fairness Hearing shall take place on August 13, 2013 at 1:00 p.m. in Courtroom 1 of the United States District Courthouse, Northern District of California, Oakland Division, 1301 Clay St., Fourth Floor, Oakland, CA 94612. The matter

1  of Class Counsel's motion for attorneys' fees, costs, and incentive awards to the Class
2  Representatives will also be considered at the hearing.

3        8.     The California Class Notice Form[6] and California Claim Form as well as the
4  FLSA Class Notice Form and FLSA Claim Form are APPROVED. No later than seven (7)
5  days after the entry of this Order, Defendant shall provide the Claims Administrator with
6  each class member's contact information. No later than twenty-one (21) days after this
7  Order, the Claims Administrator shall send notice to each member of the respective
8  settlement classes by first-class mail, postage prepaid. The notice to California Class
9  members consists of: (1) the California Class Notice Form; and (2) the California Claim
10 Form. Salassi Decl. Exhs. B-C, Dkt. 31-1. The notice to the FLSA Class consists of: (1)
11 the FLSA Class Notice Form; and (2) the FLSA Claim Form. Id., Exhs., D-E.

12       9.     The Court APPROVES the proposed Claim Period Deadline of sixty (60)
13 days from the mailing of Class Notice.

14       10.    The Court APPROVES the proposed procedure for opting out of the
15 California Class.

16       11.    The Court APPROVES the proposed procedure for opting in to the FLSA
17 Class and the FLSA aspect of the California Class.

18       12.    To object to the settlement, California Class members must follow the
19 procedures set forth in the California Class Notice Form. The objection must state the
20 objector's name and address, specify the title and case number of this case, and state the
21 reason(s) for the objection. To be considered timely, an objection must be postmarked by
22 no later than the Class Period Deadline of sixty (60) days from the initial mailing of the
23 Class Notice and must be mailed to the clerk of the court, Class Counsel, and Defendant's
24 Counsel. Any person who fails to submit a timely written objection shall be barred from
25 making any statement objecting to the settlement, including at said hearing, and shall
26 forever waive his or her objection, except by special permission of the Court. Any objector

27 ─────────────
    [6] Plaintiffs shall make the modification to the California Class Notice Form
28 described above.

desiring to be heard at the Final Fairness Hearing must contemporaneously request permission to appear at the hearing.  An objector will not be allowed to present any argument or comment at the Final Fairness Hearing unless he or she has timely objected to the settlement and accompanied said objection with a request to appear.

13. Plaintiffs shall file their motion for final approval, which shall include their response to any timely objections, at least twenty-one days (21) prior to the Final Fairness Hearing.

14. Plaintiffs shall file their motion for attorneys' fees, costs and incentive awards to the Class Representatives by no later than June 18, 2013.

15. This Order terminates Docket 31.

IT IS SO ORDERED.

Dated:  5/3/13

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge