UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MICHAEL PIERCE and PATRICK GOULD, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ROSETTA STONE, LTD., and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No:  C 11-01283 SBA<br><br>**FINAL APPROVAL ORDER AND JUDGMENT**<br><br>Docket 35, 37 |

The parties are presently before the Court on Plaintiffs Michael Pierce and Patrick Gould's (collectively, "Plaintiffs") motion for final approval of class action settlement, and Class Counsel's motion for attorneys' fees, costs, and class representative incentive awards. Dkt. 35, 37.  Defendant Rosetta Stone, Ltd. ("Defendant") has filed a statement of non-opposition to both motions.  Dkt. 36, 39.  Having read and considered the papers filed in connection with these matters and being fully informed, the Court hereby GRANTS Plaintiffs' motion for final approval of class action settlement, and GRANTS Class Counsel's motion for attorneys' fees, costs, and class representative incentive awards, for the reasons stated below and at the September 25, 2013 hearing.

I.     **BACKGROUND**

This is a wage and hour hybrid state law class action under Rule 23 of the Federal Rules of Civil Procedure and federal law collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, brought on behalf of individuals who were employed as salaried managers by Defendant.  Second Amended Complaint ("SAC") ¶ 1, Dkt. 1, Exh. R.

On April 27, 2010, Plaintiffs filed the instant action in the Superior Court of California, County of Alameda, against Defendant alleging violations of various provisions of California's Labor Code and a violation of California's Unfair Competition Law ("UCL").  Compl., Dkt. 1, Exh. A.  On May 25, 2010, a first amended complaint ("FAC") was filed.  FAC, Dkt. 1, Exh. E.   Plaintiffs filed a SAC on February 18, 2011, which added a federal claim for unlawful failure to pay wages in violation of the FLSA.  See SAC.  On March 16, 2011, the action was removed to this Court on the basis of federal question jurisdiction.  Notice of Removal, Dkt. 1.

The SAC alleges six claims for relief: (1) unlawful failure to pay overtime wages in violation of IWC Wage Order 7 and California Labor Code §§ 510, 1194, and 1198; (2) failure to provide meal and rest periods in violation of California Labor Code §§ 226.6, 512; (3) failure to provide accurate itemized wage statements in violation of California Labor Code §§ 226, 1174; (4) failure to pay wages on termination in violation of California Labor Code § 203; (5) unfair business practices in violation of the UCL; and (6) unlawful failure to pay wages in violation of the FLSA.  See SAC.

The SAC alleges that Defendant has had a consistent policy of: (1) permitting, encouraging and/or requiring its overtime-exempt salaried managers to work in excess of 8 hours per day and in excess of 40 hours per week without paying them overtime compensation in violation of the FLSA and California's wage and hour laws; (2) unlawfully failing to provide Plaintiffs and the "California Class" members statutorily-mandated meal and rest periods; (3) willfully failing to provide Plaintiffs and the "California Class" members with accurate semi-monthly itemized wage statements reflecting the total number of hours worked, the applicable deductions, and the applicable hourly rates in effect during any pay period; and (4) willfully failing to pay compensation (including unpaid overtime) in a prompt and timely manner to certain "California Class" members whose employment with Defendant was terminated.  SAC ¶¶ 4-5.

On December 27, 2011, the parties agreed to settle this matter following two private mediation sessions.  Salassi Decl. ¶ 9, Dkt. 37-1.  The parties subsequently executed an

Amended Settlement Agreement on February 21, 2012, and a Second Amended Settlement Agreement on October 31, 2012.  Id.

The settlement encompasses all claims asserted by the Plaintiffs on behalf of both the "California Class" and the "FLSA Class."  Second Am. Settlement Agreement ¶ 43, Dkt. 31-1, Exh. A.  The proposed settlement classes are defined as follows:

> The California Class shall consist of all persons employed as exempt Store Managers by Defendant, in one or more of Rosetta Stone's California retail stores during any portion of the period from April 27, 2006 through the date which the Court grants final approval of the Settlement (i.e., the 'Settlement Period').  Except for periods that such persons held the designated positions, the California Class shall not include any person holding any other position not expressly included in the definition of the California Class in this Agreement.
>
> The FLSA Class shall consist of all persons employed as exempt Store Managers by Defendant, in one or more of Rosetta Stone's retail stores located in any portion of the United States during any portion of the period from February 18, 2008 through the date which the Court grants final approval of the Settlement (i.e., the 'Settlement Period').  Except for periods that such persons held the designated positions, the FLSA Class shall not include any person holding any other position not expressly included in the definition of the FLSA Class in this Agreement.

Id. ¶¶ 44-45.

The salient terms of the settlement call for: (1) payment of a non-reversionary settlement amount of $600,000 into a gross settlement fund for the classes; (2) payment of attorneys' fees in the amount of $200,000, which represents one-third of the gross settlement fund, plus costs; and (3) an incentive award in the amount of $5,000 to each class representative.  Second Am. Settlement Agreement ¶ 43.  Defendant has agreed to pay the settlement amount in exchange for the Settlement Class Members releasing Defendant from liability for all claims related to their classification as exempt store managers during the relevant class periods, which includes, but is not limited to, any claims that were or could have been asserted.  See id. ¶¶ 69-70.

On May 3, 2013, the Court issued an Order preliminarily approving the settlement.  Dkt. 34.  On June 18, 2013, Class Counsel filed a motion for attorneys' fees, costs, and class representative incentive awards.  Dkt. 35.  On July 2, 2013, Defendant filed a statement of non-opposition to Class Counsel's motion.  Dkt. 36.  On July 23, 2013,

Plaintiffs' filed a motion for final approval of class action settlement.  Dkt. 37.  On August 6, 2013, Defendant filed a statement of non-opposition to Plaintiffs' motion for final approval of class action settlement.  Dkt. 39.  A Final Approval Hearing was held on September 25, 2013.

## II. DISCUSSION

### A. Final Approval of Class Action Settlement

#### 1. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that: "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Approval under this rule entails a two-step process: (1) preliminary approval of the settlement; and (2) final approval of the settlement at a fairness hearing following notice to the class.  See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004).  The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed.R.Civ.P. 23(e)(2); In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 946 (9th Cir. 2011).

The primary concern of Rule 23(e) is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties."  Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982).  The district court's discretion in considering final approval of a settlement is informed by balancing the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

Churchill Village LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004).  "This list is not exhaustive, and different factors may predominate in different factual contexts."  Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).  In addition to these factors,

the Court may consider the procedure by which the parties arrived at the settlement.  See Chun-Hoon v. McKee Foods Corp., 716 F.Supp.2d 848, 851 (N.D. Cal. 2010).

The district court's role in evaluating a proposed settlement is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties, and that the settlement is fair as a whole.  See Rodriguez v. West Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009).  It is neither for the court to reach any ultimate conclusions regarding the merits of the dispute, nor to second guess the settlement terms.  Officers for Justice, 688 F.2d at 625.  "Rule 23(e) wisely requires court approval of the terms of any settlement of a class action, but the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed."  Evans v. Jeff D., 475 U.S. 717, 726 (1986); see also Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998) ("Neither the district court nor this court ha[s] the ability to delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety.")

### 2. Balancing of Factors

#### a. Strength of Plaintiffs' Case

The first factor to consider is the strength of Plaintiffs' case.  Because this action settled before any substantive motions were filed, the Court did not have the opportunity to consider the merits of Plaintiffs' claims.  As such, this factor is neutral.

#### b. Risk, Expense, Complexity, and Likely Duration of Further Litigation

The next factor to consider is the risk, expense and duration associated with prosecuting this case through trial and the appellate process.  These considerations favor approval of the settlement.  There is substantial risk in litigating this case further.  Plaintiffs acknowledge that obtaining class certification in a misclassification case is "often an uphill battle" because a defendant typically argues that determining whether any employee was misclassified requires an individualized inquiry as every employee spends his or her time differently.  Pls.' Mtn. at 8.  In addition, Plaintiffs note that because employers have no

obligation to record rest periods, there is a lack of written proof to corroborate Class Members' claims regarding missed rest periods, which "diminishe[s] the prospect of certifying [a] rest break claim." Id. Plaintiffs also note that, even if a class were certified, it would be difficult to prove that Defendant knew that the requirements of the store manager position would "make it impossible for Class Members to spend the majority of their time on exempt work." Id. Further, Plaintiffs state that it would be difficult to establish "how often Class Members missed a meal or rest break and whether Defendant's policies and practices were to blame for Class Members' inability to take them," and that the Defendant willfully failed to pay managers wages due upon termination as required by California Labor Code § 203. Id. at 8-9. Finally, Plaintiffs assert that they faced increased difficulties in prevailing on their missed meal period claim in light of a recent California Supreme Court decision, citing Brinker Restaurant Corp. v. Sup. Ct., 53 Cal.4th 1004 (2012) (holding that employers need not ensure that employees do no work during off-duty meal periods). Id. at 9.

In light of the foregoing, the Court finds that Plaintiffs have shown that proceeding further in this litigation would have presented numerous risks to them. Such considerations, and the significant expense associated with litigating this action further, weigh in favor of approving the settlement. See Rodriguez, 563 F.3d at 964 (difficulties and risks in litigating further weighed in favor of approving settlement).

### c. Risk of Maintaining Class Action Status

The third factor considers the risk of maintaining class certification in the event the litigation proceeds forward. As discussed above, Plaintiffs faced difficulties and risks in obtaining and maintaining class certification. As such, this factor weighs in favor of approving the settlement.

### d. Amount Offered in Settlement

The amount offered in settlement is another factor for the Court to consider in determining whether to finally approve a proposed settlement. Churchill Village, 361 F.3d at 574. Here, the parties negotiated a $600,000 non-reversionary settlement for a potential

class of 226 members.  Based on the data provided by Defendant, Class Counsel calculated the maximum damages exposure to be $1,030,001.55, which is the sum of: (1) the total overtime wages due to non-California and California Class Members; (2) the total meal and rest period wages due to California Class Members; (3) the statutory interest on damages; (4) Labor Code § 203 damages; (5) Labor Code § 226 damages; (6) damages due under the FLSA; and (7) attorneys' fees.  Salassi Decl. ¶ 11.  Class Counsel asserts that the settlement represents a substantial portion of Defendant's maximum exposure, discounted by the risks of obtaining and maintaining class certification status and prevailing on the merits, the expense of further litigation, and the interest of providing Class Members with a guaranteed recovery quickly.  Pls.' Mtn. at 10.  The average recovery for California Class Members is $3,890.63 for the California claims and $2,964.29 for the FLSA claim.  Green Decl. ¶ 14.  The average recovery for FLSA Class Members is $1,778.57.  Id. ¶ 15.[1]  Accordingly, because the settlement has resulted in discernible benefits to class members, this factor weighs in favor of approving the Settlement.

### e. Extent of Discovery Completed and the Stage of the Proceedings

The settlement in this action was reached after the parties engaged in formal and informal discovery and participated in two mediation sessions overseen by Alan Berkowitz, Esq.  Pls.' Mtn. at 2-3, 6, 10-11.  Prior to the mediation sessions, Class Counsel reviewed numerous documents produced by Defendant and interviewed more than fifteen class members.  Id. at 2, 6.  In addition, Defendants provided Class Counsel with data necessary to perform a damages analysis, including the number of Class Members, the average wage of Class Members, and the number of workweeks worked by Class Members during the relevant period.  Id. at 3.  The fact that the settlement was reached at this juncture of the proceedings supports the conclusion that the parties' decision to settle was a fully informed one.  Therefore, this factor weighs in favor of approving the settlement.

---

[1] Plaintiffs note that the Defendant changed its classification of salaried managers from exempt to non-exempt in April 2010.  Although unclear, it appears that Defendant made this change in response to the instant action which was commenced in April 2010.

### f. Experience and Views of Counsel

The experience and views of counsel representing the parties support approval of the settlement. See Hanlon, 150 F.3d at 1026 (noting that the experience of counsel representing plaintiff and defense also favors final approval of the proposed settlement). The attorneys representing both sides are experienced in this type of litigation and are in a position to opine whether the settlement is fair, reasonable and adequate. Plaintiffs have been represented by Scott Cole & Associates, APC, a law firm that is devoted almost exclusively to the prosecution of wage and hour class actions. See Salassi Decl. ¶¶ 7, 9-10, Exh. E (firm resume, including experience of Class Counsel), Dkt. 35-1. Plaintiffs have also been represented by the The Law Offices of Timothy P. Rumberger. See Rumberger Decl. ¶ 5, Dkt. 35-2. Mr. Rumberger has 23 years of experience in both complex civil litigation and class action litigation. See id. Defendant has been represented by McKenna, Long & Aldridge LLP, an international law firm with extensive experience in complex litigation. Given the collective experience of the attorneys involved in this litigation, the Court credits counsels' view that the settlement is worthy of approval. See Rodriguez, 563 F.3d at 967 ("[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation").

### g. Government Participant

There is not a government participant in this action. As such, this factor is neutral.

### h. Reaction of the Class Members

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered. Mandujano v. Basic Vegetable Prods. Inc., 541 F.2d 832, 837 (9th Cir. 1976). Out of the potential 47 California Class Members, no class member has opted out or filed an objection to the settlement. See Green Decl. ¶¶ 5, 10-11. Given the California Class Members' positive reaction to the settlement, this factor weighs in favor of approving the settlement. See Churchill Village, 361 F.3d at 577 (affirming approval of a class action settlement where 90,000 class members received notice, and 45 objections were received).

### i. Arms–Length Negotiation

Finally, the Court considers whether the settlement was likely the result of good faith arms-length negotiations, or whether it was the product of fraud or collusion. See Officers for Justice, 688 F.2d at 625. Here, the parties agreed to settle this matter after engaging in formal and informal discovery and participating in two mediation sessions overseen by Alan Berkowitz, Esq. Because the settlement is the result of arms-length negotiations, the Court is satisfied that the settlement is not the product of fraud or collusion. Therefore, this factor weighs in favor of approving the settlement. See In re Bluetooth, 654 F.3d at 948 (participation of mediator is not dispositive, but is "a factor weighing in favor of a finding of non-collusiveness").

### j. Summary

In sum, the Court concludes that the relevant factors weigh heavily in favor of approving the settlement. Accordingly, Plaintiffs' motion for final approval of class action settlement is GRANTED.

**B. Motion for Attorneys' Fees, Costs, and Class Representative Incentive Awards**

**1. Attorneys' Fees**

Where, as here, the settlement of a class action creates a common fund, the Court has discretion to award attorneys' fees using either the lodestar method or the percentage of the fund approach. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002). Under the lodestar method, the lodestar amount is calculated by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. Hanlon, 150 F.3d at 1029. Under the percentage-of-the-recovery method, the attorneys' fees are calculated as a percentage of the common fund, with 25% established as the benchmark in the Ninth Circuit. Id. However, even when applying the percentage method, the lodestar method should be used as a cross-check to determine the fairness of the award. See Vizcaino, 290 F.3d at 1050. "The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the

1 attorneys and need not review actual billing records." In re Rite Aid Corp. Securities
2 Litigation, 396 F.3d 294, 306-307 (3rd Cir. 2005) (footnote omitted).  Regardless of the
3 methodology employed, the Court must ensure that the fee award is reasonable.  In re
4 Mercury Interactive Sec. Litig., 618 F.3d 988, 992 (9th Cir. 2010); Powers v. Eichen, 229
5 F.3d 1249, 1256 (9th Cir. 2000).
6     Here, Class Counsel requests an award of attorneys' fees in the amount of $150,000.
7 When viewed as a percentage of the common fund, the requested fee award amounts to
8 25% of the fund.  Thus, Class Counsel's request is consistent with the benchmark
9 established by the Ninth Circuit.  The Court finds that Class Counsel's fee request is
10 reasonable given the results achieved and the risk Class Counsel took in pursuing this
11 matter.  A lodestar cross-check confirms the reasonableness of the fee request.
12     Class Counsel's asserted lodestar of $590,331.50, Salassi Decl., Exhs. B-C, is
13 substantially more than 25% of the common fund, i.e., $150,000.  The $150,000 fee award
14 requested by Class Counsel is approximately 25% of the lodestar.  Thus, the requested fee
15 award results in a so-called negative multiplier, which suggests that the percentage of the
16 fund amount is reasonable and fair.  See Chun-Hoon, 716 F.Supp.2d at 854; In re Portal
17 Software, Inc. Securities Litigation, 2007 WL 4171201, at *16 (N.D. Cal. 2007).  Indeed,
18 even if the Court found that the lodestar should be reduced by half, based on the hours
19 billed and rates charged (i.e., reduced to $295,165.75), the fee requested would still reflect
20 a negative multiplier of approximately 0.51 ($150,000 / 295,165.75).
21     **2.     Costs**
22     Class Counsel seek reimbursement of expenses in the aggregate amount of
23 $10,668.72.  Salassi Decl., Exhs. C-D, Dkt. 35.  These costs include expenses incurred for
24 mediation, postage, legal research fees, filing fees, photocopying costs, messenger and
25 travel costs, and other administrative expenses.  Id.  Having reviewed the evidence
26 submitted in support of Class Counsel's request for costs, the Court finds that the costs
27 incurred by Class Counsel were reasonably incurred.  See In re TD Ameritrade Account
28 Holder Litigation, 2011 WL 4079226, *16 (N.D. Cal. 2011) (Armstrong, J.) (approving

1  $27,807.91 in costs, including costs for filing fees, photocopying costs, messenger and
2  travel costs, and other administrative expenses).  Accordingly, the Court awards Class
3  Counsel costs in the sum of $10,668.72.

### 3.   Incentive Awards

Class Counsel requests an incentive award of $5,000 for each of the Class Representatives to compensate them for their efforts on behalf of the class.  Dkt. 35.  Class Counsel contends that the requested incentive payments are reasonable given the work the Class Representatives performed on behalf of the class, the risks they face for their participation in the litigation, and the minimal effect their request will have on the amount of each Class Members' recovery.  Id.  According to Class Counsel, this case would not have settled on the same terms, or in such a timely manner, without the Class Representatives' participation and significant efforts.  Id.

"The district court must evaluate [the named plaintiff's] awards individually, using relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation. . . ."  Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003).  "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  Rodriguez, 563 F.3d at 958-959.  In this district, a $5,000 payment is presumptively reasonable.  Ko v. Natura Pet Products, Inc., 2012 WL 3945541, at *15 (N.D. Cal. 2012) (Armstrong, J.) (citing Hopson v. Hanesbrands Inc., 2009 WL 928133, at *10 (N.D. Cal. 2009)).

Here, the Class Representatives assisted Class Counsel in the resolution of this case by producing documents, providing detailed background information about Defendant's policies and procedures and the day-to-day mechanics of Defendant's operations, identifying potential witnesses, discussing factual issues and litigation strategy with counsel, and by reviewing documents with counsel.  See Pierce Decl. ¶ 4; Gould Decl. ¶ 4.

1  The Class Representatives also made themselves available to Class Counsel throughout the
2  litigation and settlement process to answer questions regarding company policies related to
3  the claims alleged in this action, to discuss the claims in this action and settlement, and to
4  evaluate the settlement agreement.  Pierce Decl. ¶¶ 4-5; Gould Decl. ¶¶ 4-5.  Gould
5  estimates that he spent approximately 75-85 hours assisting Class Counsel in prosecuting
6  this case, while Pierce estimates that he spent approximately 80-90 hours assisting Class
7  Counsel in prosecuting this case.  Pierce Decl. ¶ 11; Gould Decl. ¶ 11.  In addition to the
8  work performed on behalf of Class Members, the Class Representatives undertook a
9  financial risk that, in the event of a judgment in favor of Defendant, they may have been
10 personally responsible for any costs awarded in favor of Defendant.  See, Whiteway v.
11 FedEx Kinkos Office & Print Servs., Inc., 2007 WL 4531783, at * 2-4 (N.D. Cal. 2007)
12 (Armstrong. J.).  Pierce and Gould also aver that they "took a huge risk by coming forward
13 and filing this class action" because "[a]lthough future employers are not supposed to
14 retaliate against [them] for [their] involvement in this case, [they] think the reality is that
15 [they] will experience a certain stigma for untold years to come."  Pierce Decl. ¶ 6; Gould
16 Decl. ¶ 6.

17    Given the work the Class Representatives performed on behalf of Class Members,
18 the risk the Class Representative undertook in bringing this action, and the Class Members'
19 response to the settlement,[2] the Court finds that the requested incentive payments of $5,000
20 are reasonable and appropriate.

21 **III.  CONCLUSION**

22    For the reasons stated above, IT IS HEREBY ORDERED THAT:

23    1.    Plaintiffs' motion for final approval of class action settlement is GRANTED.

24    2.    The terms of the Second Amended Settlement Agreement are incorporated
25 into this Order and are APPROVED.  All terms in this Order that are defined in the Second

---

[2] There has been no objection to the incentive awards requested.

1 Amended Settlement Agreement shall have the same meaning as set forth in the Second Amended Settlement Agreement.

    3. The parties and the Settlement Administrator shall perform their respective obligations under the terms of the Settlement Agreement.

    4. Class Counsel's motion for attorneys' fees, costs, and class representative incentive awards is GRANTED. Class Counsel is awarded $150,000 in attorneys' fees, plus costs in the amount of $10,668.72. The Class Representatives are each awarded $5,000 as an incentive award.

    5. The Settlement Administrator is entitled to $16,500 for administrative fees.

    6. Pursuant to the terms of the Second Amended Settlement Agreement, the instant action is dismissed with prejudice, subject to Paragraphs 7 below.

    7. Without affecting the finality of this Order in any way, the Court hereby retains jurisdiction to resolve any dispute regarding compliance with the Second Amended Settlement Agreement that cannot be resolved through the meet and confer process. Any disputes regarding the Second Amended Settlement Agreement shall be referred to a magistrate judge.

    8. Judgment is entered in accordance with the findings in this Order. This Judgment is the Final Judgment in the suit as to all Settlement Class Members who have not excluded himself/herself from the settlement. The Court finds that there is no just reason for delay and expressly directs the Clerk of the Court to enter Judgment immediately.

    9. The Clerk shall close the file and terminate all pending matters.

IT IS SO ORDERED.

Dated: 9/26/2013

                                                          SAUNDRA BROWN ARMSTRONG
                                                          United States District Judge